# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Subsurface Technologies )  ASBCA No. 59775
)
Under Contract No. W9124M-07-D-0006 )

APPEARANCE FOR THE APPELLANT:  Mr. Larrye Cheaves
Owner

APPEARANCES FOR THE GOVERNMENT:  Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ James P. Leary, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MELNICK ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Mr. Larrye Cheaves does business as Subsurface Technologies (Subsurface), a firm that locates underground utilities. He claims Subsurface has only received one fourth of the payments to which it is entitled under a contract with the Army Contracting Agency. The government moves to dismiss the appeal. Because Subsurface previously elected to pursue this claim before the United States Court of Federal Claims, where it was rejected, the Board lacks jurisdiction to entertain it.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

In April of 2007, the Army awarded Contract No. W9124M-07-D-0006 to Subsurface to "locate underground utilities and complete/approve excavation permits" at Fort Stewart and Hunter Army Airfield, Georgia (gov't mot., ex. 1 at 3 of 40). The contract provided for a unit price of $125 per "[l]ocate" (*id.* at 6 of 40). On 18 August 2010, Subsurface submitted a certified claim to the contracting officer seeking, among other things, an additional $3,902,000 (gov't mot., ex. 4). Subsurface alleged that the government had underpaid it by not providing the unit price for each utility line (gas, sewer, electric, and water) it had discovered in a particular area. Instead, the government had only paid the unit price once for each site containing utilities. (*Id.* at 4-5) Because gas, electric, water, and two kinds of sewer utilities were typically present at each "locate," Suburface sought to multiply 7,804 locations for which it was paid by 5 to total 39,020, which it said should then be multiplied by $125 to total $4,877,500. Subsurface subtracted $975,500 that it had previously been paid to reach its $3,902,000 figure. (*Id.* at 5) The contracting officer denied the claim on 6 September 2011 (gov't mot., ex. 7).

On 10 April 2012, Subsurface filed suit upon its denied claim in the United States Court of Federal Claims (gov't mot., ex. 8). Like its claim, Subsurface's complaint alleged that "[t]he contract...contemplated payment of $125.00 per locate, or per location of each individual utility" (*id.* ¶ 10). It maintained that "[e]ach physical location actually comprised 4 or more separate utilities which Plaintiff was required to locate and mark" and that "[a]s a result, Plaintiff was paid for only 1/4 of the work lawfully performed under [the contract]" (*id.* ¶¶ 12-13). The complaint stated that "Defendant has refused to pay Plaintiff for each utility Plaintiff located...and instead has only paid Plaintiff $125.00 per physical location at which Plaintiff located utilities" (*id.* ¶ 16). The complaint concluded that Subsurface was entitled to compensation for each of four utilities at the 7,804 physical locations mentioned in the claim, which would total 31,216 utilities. The complaint sought $2,976,500 in damages. (*Id.* ¶¶ 18-20)

In a published ruling dated 10 January 2013, excluding Subsurface's expert report, the Court of Federal Claims recognized that the question before it was whether "the 'unit' referenced [in the contract's] entries is directed at each utility located by [Subsurface] or each permit processed after [Subsurface]...located all the utilities at a given physical location." *Cheaves v. United States,* 108 Fed. Cl. 406, 408 (2013). The court rejected Subsurface's contention that "each 'locate' (i.e., each separate utility he locates) is a contractual unit." *Id.* Rather, the court concluded "the contract contemplated payment on a per-permit basis." *Id.* at 410. Subsequently, on 29 April 2014, the court granted summary judgment for the government (gov't mot., ex. 13). Finding that the terms "permit," "locate," "locate request," and "ticket" were all interchangeable, the court held:

> (1) [T]he contract called for payment for each permit processed; (2) according to [Subsurface], a permit is also called a "locate request"; (3) per the Dig Law and [Subsurface's] pre-award letter to the Army, a locate request can encompass more than one utility; and (4) therefore, under the contract, more than one utility may be covered by each permit issued.

(*Id.* at 4-5) The court ruled that the contract did not require "payment based on each separate utility located," and the "Government was merely following the terms of the contract when it paid [Subsurface] for each permit (or completed locate request) performed" (*id.* at 5).

By letter dated 6 November 2014, Mr. Cheaves submitted another certified claim to the contracting officer on behalf of Subsurface (gov't mot., ex. 16). Recognizing that the Court of Federal Claims held that the unit of payment under the contract was not each utility, but instead "each permit or completed locate request performed," Mr. Cheaves suggested that had been Subsurface's interpretation from the beginning (*id.* at 1). Mr. Cheaves continued to claim that Subsurface had only been compensated for "one

2

fourth of the total effort expended" (*id.* at 2). Accordingly, he recharacterized the 31,216 utilities for which Subsurface sought payment in the Court of Federal Claims as "locate request[s]," and sought a total of $2,926,500 in extra compensation for them *(id.)*. The claim was denied by final decision dated 4 December 2014 (gov't mot., ex. 17). This appeal followed.

## DECISION

The government seeks dismissal for lack of jurisdiction based upon the Election Doctrine. "[P]ursuant to the Contracts Disputes Act, a contractor wishing to contest an adverse final decision by the contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the [Court of Federal Claims]." This choice forms the basis of the "Election Doctrine." *National Neighbors, Inc. v. United States,* 839 F.2d 1539, 1541 (Fed. Cir. 1988). Under that doctrine, once a contractor has availed itself of one forum over another, and that forum can exercise jurisdiction, the contractor is bound to that decision and cannot later pursue its action in another forum. *See* 41 U.S.C. § 7104. The contractor is presented "with an either-or choice," and the second forum must dismiss for lack of jurisdiction. *Bonneville Assocs. v. United States,* 43 F.3d 649, 653-55 (Fed. Cir. 1994); *National Neighbors,* 839 F.2d at 1542.

Before the Court of Federal Claims, Subsurface maintained that "[e]ach physical location actually comprised 4 or more separate utilities" (gov't mot., ex. 8, ¶ 12). Subsurface "was paid for only 1/4 of the work lawfully performed," leading it to contend that "[d]efendant...refused to pay Plaintiff for each utility Plaintiff located pursuant to the contract, and instead only paid Plaintiff $125.00 per physical location" (*id.* ¶¶ 13, 16). The Court of Federal Claims exercised jurisdiction over this suit and rejected it on its merits. The court disagreed with Subsurface's contention that it had only received one fourth of the payment to which it was entitled per location, ruling "the contract contemplated payment on a per-permit basis." *Cheaves,* 108 Fed. Cl. at 410. The court found that the terms "permit," "locate," "locate request," and "ticket" were all interchangeable (gov't mot., ex. 13 at 4).

Mr. Cheaves' current claim on behalf of Subsurface is the same as what he pursued before the Court of Federal Claims. Though he has substituted terminology, now alleging that Subsurface seeks payment for each permit or completed locate request, instead of for each utility, the underlying nature of both claims is the same (gov't mot., ex. 16). Each one contends that the government only paid Subsurface one fourth of what it was entitled to receive under the contract for the work it performed (gov't mot, ex. 8 ¶ 13, ex. 16 at 2). Accordingly, they arise from the same operative facts and constitute the same claim. *See Dawkins General Contractors & Supply, Inc.,* ASBCA No. 48535, 03-2 BCA ¶ 32,305 at 159,844 (distinguishing claims based upon whether they "derive from common or related operative facts"). Because Subsurface already elected to pursue

3

this claim in the Court of Federal Claims, which exercised jurisdiction over it, this Board lacks jurisdiction to entertain an appeal involving it.[1]

## CONCLUSION

The appeal is dismissed for lack of jurisdiction.

Dated: 1 September 2015

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59775, Appeal of Subsurface Technologies, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

---

[1] Given this ruling dismissing for lack of jurisdiction, we do not consider the government's additional argument that the claim is barred by 28 U.S.C. § 2519.